IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,     :

         Plaintiff,

                    :       Case No. 3:13-cr-003

     v.                :

                         JUDGE WALTER H. RICE

RAJA THOMAS,

         Defendant.     :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE (DOC. #21), AND SUPPLEMENTAL MOTION
TO SUPPRESS (DOC. #39)

---

Defendant Raja Thomas was charged with conspiracy to possess with intent to distribute in excess of 1 kilogram of heroin, in violation of 21 U.S.C. § 846, possession with intent to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i), and maintaining a place at 1793 Hopewell Avenue, Dayton, Ohio, for the purpose of manufacturing, distributing and using heroin, in violation of 21 U.S.C. § 856(a)(1). This matter is currently before the Court on Defendant's Motion to Suppress Evidence, Doc. #21, and his Supplemental Motion to Suppress, Doc. #39. The Court held hearings on the motions on March 28, 2014, and July 11, 2014. For the reasons set forth below, the Court overrules Defendant's motions.

I.

On December 11, 2012, Federal Bureau of Investigation ("FBI") Special Agent Robert Buzzard applied for search warrants for 1793 Hopewell Avenue, Dayton, Ohio, and 459 Adelite Avenue, Dayton, Ohio. According to Buzzard's affidavit, submitted in support of the warrant requests, he had probable cause to believe that these houses contained evidence of Defendant Raja Thomas's long-term drug trafficking activity.

In his affidavit, Buzzard, who had been employed with the FBI for nearly eleven years, stated that, according to police reports, Thomas was present at 459 Adelite Avenue in 2003 when law enforcement officers located and seized narcotics pursuant to a search warrant. Again, in September of 2009, Thomas was present at that location, along with Matthew Hytower, when officers responded to a report of a burglary in progress. A subsequent search of the Adelite Avenue house uncovered $50,000 in U.S. currency, a loaded 9mm handgun, and a scale containing cocaine residue. On September 22, 2010, a confidential source ("CS1"), who had provided reliable information in the past, reported that Thomas was selling large quantities of heroin in the Dayton area.

Buzzard further stated that, in June of 2012, an anonymous caller reported that Thomas was selling narcotics at the Adelite Avenue location, and often drove a blue Buick or a white Dodge pickup truck. In October of 2012, a second confidential source ("CS2"), who had provided reliable information in the past, also reported that Thomas was selling heroin at the Adelite Avenue location. That

2

informant gave law enforcement officers Thomas's cell phone number.  During a controlled buy at the Adelite Avenue house in October of 2012, CS2 observed large quantities of heroin, a handgun, and U.S. currency.

On November 14, 2012, Buzzard obtained a federal search warrant authorizing him to track Thomas's cellular phone location.  Spot checks conducted by law enforcement officers on numerous occasions between November 16, 2012, and December 7, 2012, repeatedly placed Thomas at the Adelite Avenue and Hopewell Avenue locations.  On November 19, 2012, CS1 reported that Thomas was living at the Hopewell Avenue house, which had security bars on the exterior windows and doors.  On December 8, 2012, CS2 told Buzzard that Thomas was storing and selling heroin at both locations.  CS2 had recently accompanied another individual to purchase heroin at the Hopewell Avenue location.  Buzzard subsequently learned that utilities at the Hopewell Avenue residence were in Matthew Hytower's name.

The magistrate judge issued the requested search warrants on December 11, 2012.  The warrants were executed very early in the morning on December 13, 2012.  Buzzard was present for the search of the Hopewell Avenue house. Officers there found four hydraulic presses used to compress narcotics, cutting agents and many other materials used to mix and package narcotics.  A safe in the basement contained almost a kilogram of heroin and $103,860.00 in U.S. currency.  Two individuals present at the house told officers that Thomas was living there, that he was a heroin dealer, and that the drug items belonged to him.

Other evidence supported a finding that Thomas was residing at the house on Hopewell Avenue.  Officers seized prescription bottles, mail, shipping labels and court documents with Thomas's name on them, and schoolwork with Thomas's daughter's name on it.  In addition, they seized photographs of Thomas, and the title and registration to the car that he was using.  Officers who executed the search warrant at the Adelite Avenue address seized handguns, a scale, and baggies with drug residue.

Thomas was not present at either location when the search warrants were executed.  He was at his girlfriend's house at 3773 Lake Bend Drive in Dayton, and was under surveillance by Detective Rick Bergman of the Montgomery County Sheriff's Office, and Task Force Officer Tim Bilinski. Bergman was working in conjunction with the FBI Safe Streets Task Force investigating reports of heroin trafficking.

After Buzzard and the other law enforcement officers entered the Hopewell Avenue house, observed evidence of drug trafficking and found Thomas's personal belongings, Buzzard contacted Bergman by phone to tell him that they had probable cause to arrest Thomas.  Shortly thereafter, when Thomas exited his girlfriend's house, Bergman and Bilinski arrested him on state drug trafficking charges and took him into custody.  At the time of his arrest, Thomas had two cell phones, eight grams of marijuana, and $378 in cash with him.  Following Thomas's arrest, his girlfriend gave officers consent to search her car, which Thomas had been using.  In the car, officers found a garage door opener that

activated the garage door at 1793 Hopewell Avenue, and a key to the front door of that house.

## II.

On December 14, 2012, a criminal complaint was filed in this court and Thomas was transferred to federal custody. He was indicted on January 8, 2013, on charges of: (1) conspiracy to possess with intent to distribute in excess of 1 kilogram of heroin, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i); and (3) maintaining a place at 1793 Hopewell Avenue, Dayton, Ohio, for the purpose of manufacturing, distributing and using heroin, in violation of 21 U.S.C. § 856(a)(1).

On February 18, 2013, Thomas filed a Motion to Suppress Evidence obtained as a result of his December 13, 2012, arrest, detention and interrogation, and all evidence obtained as a result of the December 13, 2012, search and seizure of personal property from 1793 Hopewell Avenue. Doc. #21. He argued that such evidence was obtained in violation of his rights under the Fourth Amendment to the United States Constitution. On January 25, 2014, following several substitutions of defense counsel, Thomas filed a Supplemental Motion to Suppress. Doc. #39. An evidentiary hearing began on March 28, 2014, and was continued on July 11, 2014. The parties then submitted post-hearing briefs. Docs. ##52-55.

5

III.

The Fourth Amendment establishes the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. To protect that right, the judicially-created exclusionary rule "forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). Under the "fruit of the poisonous tree" doctrine, all derivative evidence flowing from an illegal search or seizure is usually also suppressed. *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005).

Thomas maintains that the evidence at issue should be suppressed for three reasons. First, he argues that Buzzard's search warrant affidavit relied on stale information and was insufficient to establish probable cause to believe that evidence of drug trafficking would be found at either house. Second, he argues that the personal items that were seized from the Hopewell Avenue house did not fall within the scope of the search warrant. Third, he argues that he was arrested without probable cause to believe that he had committed a felony.

The Government argues that Thomas has no standing to challenge the searches and seizures because he has not demonstrated that he had a legitimate expectation of privacy in either house. The Government also argues that Buzzard's search warrant affidavit was sufficient to establish probable cause, that the items seized all fell within the scope of the search warrants, and that probable cause existed for Thomas's warrantless arrest.

6

### A.    Standing

Citing *Rakas v. Illinois*, 439 U.S. 128 (1978), the Government first argues that Thomas has no standing to challenge the searches and seizures since he has not demonstrated that he had a reasonable expectation of privacy in either house. In *Rakas*, the court held that one can claim the protection of the Fourth Amendment only by showing "a legitimate expectation of privacy in the invaded place." *Id.* at 143. Thomas does not specifically respond to this argument.

The fact that Thomas was not the legal owner of either house is not dispositive. *See Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990) (holding that an overnight guest in another's home has a legitimate expectation of privacy). Thomas spent significant time at both locations. More importantly, CS1 reported that Thomas was actually living at the Hopewell Avenue address. That statement was corroborated by the two individuals present at that house when the search was conducted, and by the fact that law enforcement officers discovered many of Thomas's personal belongings at that location.

There is no evidence that Thomas was living at the Hopewell address without the owner's permission. It is undisputed that he had a key to the front door, as well as a garage door opener. Under the circumstances presented, the Court finds that Thomas had a legitimate expectation of privacy in the Hopewell house, and has standing to challenge the search and seizure that took place there.

Likewise, there is no evidence that Thomas was ever at the Adelite Avenue location without the owner's permission. This fact alone is not necessarily

sufficient to establish a legitimate expectation of privacy.  *See Olson*, 495 U.S. at 97 (noting that the Supreme Court has rejected the "legitimately on the premises" standard as too broad).  Nevertheless, the fact that Thomas's ties to the Adelite Avenue house span nearly ten years, as evidenced by police reports dating back as far as 2003, support a finding that he had a sufficient interest in that property to warrant a reasonable expectation of privacy.

### B.     Sufficiency of Buzzard's Search Warrant Affidavit

Thomas contends that the affidavit submitted by Buzzard in support of the applications for the search warrants was insufficient to establish probable cause for the issuance of those warrants.  Nevertheless, great deference is owed to the magistrate judge's determination of probable cause.  As the Supreme Court held in *Illinois v. Gates*, 462 U.S. 213 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* at 238-39.  Here, Buzzard's affidavit provides the requisite "substantial basis."

Thomas correctly notes that much of the information contained in the affidavit is stale.  For example, Buzzard noted that, according to police reports, Thomas had been present at the Adelite Avenue location in 2003 and again in 2009, when items associated with drug trafficking were seized.  Buzzard also

noted that CS1 reported on September 22, 2010, that Thomas was part of a large-scale heroin operation in the Dayton area. The Court agrees that, standing alone, this information would be insufficient to support the issuance of search warrants more than two years later, on December 11, 2012.

But even though Buzzard's affidavit refers to these previous incidents, it does not rely on them; they are cited simply as background information concerning the drug trafficking investigation. The affidavit also includes a great deal of more recent evidence, beginning with an anonymous tip in June of 2012, that Thomas was selling narcotics from the Adelite Avenue location, and frequently drove a blue Buick and a white Dodge pickup truck.

According to Buzzard's affidavit, in the two months leading up to the application for the search warrants, he received information from CS2 that Thomas was selling large quantities of heroin from the Adelite Avenue location. CS2 also provided Buzzard with Thomas's cell phone number, and, in October of 2012, participated in a controlled buy from Thomas at the Adelite Avenue location. In late November and early December of 2012, after obtaining permission to track Thomas's cell phone location, law enforcement officers conducted spot checks that frequently placed Thomas at the Adelite Avenue and Hopewell Avenue locations. On November 19, 2012, CS1 reported that Thomas was living at the Hopewell Avenue house and, on December 8, 2012, CS2 reported that Thomas was storing and selling heroin from the Hopewell Avenue location. In early December, CS2 had accompanied another individual to that house to purchase

9

heroin. Finally, Buzzard noted that the electric bill for the Hopewell Avenue house was in Matthew Hytower's name; Hytower is the same individual who was with Thomas at the Adelite Avenue location when police investigated a burglary in 2009. This evidence is not stale.

Thomas also maintains that, viewing the totality of the circumstances, this information is insufficient to establish probable cause that a search of the Hopewell Avenue house would uncover evidence of a drug trafficking crime. He notes that law enforcement officers failed to verify CS1's statement that security bars were installed on the exterior windows and doors of the Hopewell location, and argues that CS1's statement that Thomas was living at that location does not demonstrate that any drug trafficking activity was taking place there. As the Sixth Circuit has recognized, however, "in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (citation omitted). Therefore, evidence that Thomas was living at the Hopewell Avenue house supports a finding that law enforcement officers were likely to find evidence of drug trafficking there.

Thomas also argues that information provided by CS2 relates only to the Adelite Avenue location, but he overlooks CS2's December 8, 2012, statements that Thomas was living at the Hopewell Avenue address, and that CS2 was present when another individual purchased heroin at that location earlier that month. These statements, combined with corroborating evidence from CS1 that Thomas was residing at the Hopewell Avenue location in November of 2012, and

10

cell phone tracking and surveillance that placed Thomas at that house on numerous occasions in the weeks leading up to the search warrant application, are sufficient to establish probable cause to believe that evidence of drug trafficking would be found at the Hopewell Avenue location.

The Court concludes that Buzzard's affidavit provided a substantial basis for the magistrate judge's determination that there was a fair probability that contraband or evidence of a crime would be found at the Hopewell Avenue house.[1]

### C.     Scope of Search Warrant

Thomas next argues that the personal items that the officers seized from the Hopewell Avenue house — including prescription bottles, mail, shipping labels and court documents with his name on them, photographs, the car title and registration, and his daughter's schoolwork — exceeded the scope of the search warrant and must be excluded from consideration.

A search warrant may be issued for evidence of a crime, contraband or fruits of a crime, or property used in committing a crime. A search warrant may also be issued for a particular person to be arrested. Fed. R. Crim. P. 41(c). Federal Rule of Criminal Procedure 41(e)(2)(A) requires the search warrant to identify the person or property to be searched, and any person or property to be seized. *See also* U.S.

---

[1] Citing *United States v. Leon*, 468 U.S. 897 (1984), the Government also argues that, even if the Court finds that Buzzard's affidavit was deficient in establishing probable cause, the exclusionary rule should not apply because the officers executing the search warrants acted in good faith reliance on the warrants. Because the Court finds that the affidavit was sufficient to establish probable cause for the searches, it need not address this alternative argument.

Const. amend. IV (requiring warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized"). Nevertheless, "[t]he degree of specificity required depends on the crime involved and the types of items sought." *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991).

It is undisputed that the personal items at issue are not themselves contraband and were not used in committing the drug trafficking crimes. Nevertheless, there is no doubt that these personal items connect Thomas to the Hopewell Avenue house.

The Government argues that the items fall within the categories of items subject to seizure, as set forth in Attachment B to the search warrant. Category E permitted the seizure of "correspondence, books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances." Category F permitted the seizure of "personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances."

The Court finds that the items seized fall within the scope of Category F, in that they contain names, addresses, phone numbers, or other information identifying people connected to the house where the drug trafficking was taking place. The fact that Thomas had personal belongings at the Hopewell Avenue house is relevant to show his involvement in the alleged crime. These items were therefore properly seized.

12

### D.    Probable Cause for Arrest

Finally, Thomas argues that his warrantless arrest was unconstitutional because the officers lacked probable cause to believe that he had committed a crime.  As the Government notes, however, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates*, 462 U.S. at 243 n.13.

In this case, there was sufficient evidence to establish probable cause for Thomas's arrest.  At the time the search warrants were executed, law enforcement officers already had substantial evidence connecting Thomas to both houses.  Reliable confidential sources had identified these houses as places where Thomas was presently storing and selling heroin.  CS1 reported that Thomas was living at the Hopewell Avenue site.  CS2 had made a controlled buy from Thomas at the Adelite Avenue house and observed evidence of drug trafficking there.  CS2 was also present when a friend bought heroin at the Hopewell Avenue location.  Cell phone tracking and surveillance corroborated Thomas's ongoing connection to both houses.

When the search warrant was executed at the Hopewell Avenue house, officers found evidence of a large-scale heroin trafficking operation.  They also found numerous personal items linking Thomas to that house.  Moreover, the two other individuals present told officers that Thomas was a heroin dealer, that he lived there, and that the drugs and drug paraphernalia belonged to him.  Based on the evidence available to the officers at that time, there was a substantial chance

that Thomas was involved in the heroin trafficking.  Probable cause therefore

existed for his warrantless arrest.

IV.

Finding no violation of Thomas's Fourth Amendment rights, the Court

OVERRULES his Motion to Suppress Evidence (Doc. #21) and his Supplemental

Motion to Suppress (Doc. #39).

Date: September 8, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE